1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MIGUEL DOMINGUEZ,

                              Plaintiff,

v.

CITY OF ESCONDIDO, et al.,

                              Defendants.

Case No.:  20-CV-442 JLS (AHG)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(ECF No. 27)

     Presently before the Court is Defendants Mark Zeller, Cory Spinos, and the City of Escondido's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.  ECF No. 27.  Pursuant to Local Rule 7.1(d)(1), the Court finds the matters presented appropriate for resolution without oral argument.   Having considered the Parties' arguments, the evidence, and the law, the Court rules as follows.

**BACKGROUND**

**I.     Factual Background**

     This is a civil rights action alleging excessive force by police officers in forcibly extracting a detained individual from his vehicle.

///

1

### A.    The Initial Encounter

On March 7, 2018, Defendant Officer Zeller responded to a dispatch call to check the welfare of a child allegedly left unrestrained in a vehicle stalled in traffic. Declaration of Mark Zeller (ECF No. 27-4, "Zeller Decl.") ¶ 2; ECF No. 27-8 at 2:3–11.[1] According to Officer Zeller, upon arriving on the scene, he was not able to see the driver of the vehicle, but was able to identify an unrestrained child within.  Zeller Decl. ¶ 2. Officer Zeller subsequently opened the door and saw Plaintiff sitting in the driver's seat holding a blow torch in his right hand.  Zeller Decl. ¶ 2; Bodycam Footage taken by Officer Mark Zeller (ECF No. 27-9, "Zeller BWC") at 0:17–0:25; ECF No. 27-13 at 158:17–19.  According to Officer Zeller, Plaintiff had an unknown object in his left hand. Zeller Decl. ¶ 2.

Officer Zeller asked Plaintiff if he had identification, to which Plaintiff replied in the affirmative.  ECF No. 27-10 at 2:8–9; Zeller BWC at 0:54–57.  Officer Zeller then asked Plaintiff if he was on parole or probation, to which Plaintiff replied in the negative. ECF No. 27-10 at 2:19–22.  According to Officer Zeller, he suspected Plaintiff was smoking or about to smoke drugs and was concealing a drug pipe in his left hand.  Zeller Decl. ¶¶ 2–3; Zeller BWC at 2:53–2:57.

### B.    Officer Zeller's Questioning of Plaintiff

While waiting for backup, Officer Zeller learned from dispatch Plaintiff had previously been arrested for drugs, vandalism, and assault with a deadly weapon.  Zeller Decl. ¶ 3.

The following exchange subsequently occurred:

> [ZELLER]:  So I'm looking for some honesty here . . . do you
> have a pipe on you?
>
> [PLAINTIFF]: No.

---

[1] According to Plaintiff, he was driving back from a convenience store when his vehicle stalled in front of his apartment entrance.  ECF No. 27-13 at 53:1–14.

[ZELLER]: No?  Are there any pipes in the car?

[PLAINTIFF]: No.

[ZELLER]: No?  Okay.  So why would you be holding a blow torch?

[PLAINTIFF]: That's my lighter.  For my cigarettes.

[ZELLER]: For cigarettes?

[PLAINTIFF]: Yeah.  That's also my tool for soldering.  And I do have electrical issues on the car.  And I do use that . . . I've used that for everything from . . . .

Zeller BWC at 11:41–12:37; ECF No. 27-10 at 4:9–17.

### C.    The Detainment and Use of Force Against Plaintiff

After some more time elapsed, Plaintiff questioned Officer Zeller as to why he was "still here with the door open[.]"  Zeller BWC at 15:14–15:59; ECF No. 27-10 at 5:3–14.  Plaintiff further expressed he wanted to either get his car inside or take his daughter in. *Id.*  Officer Zeller responded that he was waiting for another officer to proceed to the "next step." *Id.*

A few moments afterwards, Officer Spinos arrived on the scene.   Bodycam Footage taken by Officer Cory Spinos I (ECF No. 27-11, "Spinos BWC I") at 0:29–0:34.

After Officer Spinos' arrival, the following exchange occurred:

[ZELLER]:   Alright. I need you to follow instructions okay? At this point you're being detained.  If you –

[PLAINTIFF]: Why am I being detained?

[ZELLER]: If you do other than you're told force may be used against you, so you need to follow instructions okay?

[PLAINTIFF]: Why am I being detained?

Zeller BWC at 16:12–16:24; ECF No. 27-10 at 5:16–21

3

Officer Zeller then reached into the vehicle and grasped Plaintiff's left arm while simultaneously instructing Plaintiff to: "go ahead and step out of the car for me." Zeller BWC at 16:26–16:30; ECF No. 27-10 at 5:22. Plaintiff did not step out of the vehicle, but continued to question why he was being detained. Zeller BWC at 16:31–16:39. Officer Spinos also reached into Plaintiff's vehicle. Zeller BWC at 16:37–16:45; Spinos BWC I at 1:00–1:08.

According to the Officers, Plaintiff "shot his right hand behind and under the passenger seat of the car." Zeller Decl. ¶ 6; Declaration of Cory Spinos (ECF No. 27-3 ("Spinos Decl.") ¶ 4. At his deposition, Plaintiff did not deny he was using his right arm to hold the passenger seat of his vehicle to prevent himself from being pulled out. ECF No. 27-13 at 186:25–187:9.

Officer Zeller subsequently informed Officer Spinos he believed Plaintiff had a "pipe" down by Plaintiff's side. Zeller BWC at 16:38–16:40; ECF No. 27-10 at 6:5. According to Officer Spinos, he used a "pressure point application" on the left side of Plaintiff's face to try to get Plaintiff to "release his grip" and exit the vehicle. Spinos Decl. ¶ 4. Officer Zeller then pulled Plaintiff's left arm, and both Officers Zeller and Spinos forcibly held Plaintiff's left arm outside the vehicle. Zeller BWC at 16:48–16:52; Zeller Decl. ¶ 6; Spinos Decl. ¶ 4. The bodycam footage shows that Officer Zeller then attempted to extract Plaintiff from the vehicle. Spinos BWC I at 1:14–2:18. At his deposition, Plaintiff stated he refused to exit the vehicle because the Officers had not told him why he was being detained and because he feared for his safety and that of his daughter. ECF No. 27-13 at 195:23–196:7.

According to Officer Zeller, he put his left knee on Plaintiff's thigh and entered the vehicle. Zeller Decl. ¶ 7. He then used his left forearm to apply pressure along the left side of Plaintiff's neck to prevent himself from being bitten. *Id.* The bodycam footage indicates Officer Zeller kept pressure on Plaintiff's neck for approximately forty-five seconds or less. Zeller BWC at 17:00–17:45. In the attempt to extract Plaintiff, Officer

///

Spinos warned Plaintiff he would deploy a taser—but ultimately did not do so.  Zeller Decl. ¶ 6; Spinos Decl. ¶ 4; Zeller BWC at 17:07–17:09; Spinos BWC I at 1:28–1:35.

On the bodycam footage, Plaintiff is heard telling the Officers he cannot breathe. Zeller BWC at 17:31–17:32; Spinos BWC I at 1:52–1:54; ECF No. 27-10 at 7:10. According to Plaintiff, during the Officers' application of force, he began to black out and let go of the passenger seat.  ECF No. 27-13 at 196:14–20.  However, according to both Officers, Plaintiff verbally indicated he would comply with their directions and released his hold on the vehicle.  Zeller Decl. ¶ 9; Spinos Decl. ¶ 7.

The Officers subsequently pulled Plaintiff out of the vehicle, forced Plaintiff to his knees, and then to his stomach, before placing him in handcuffs.  Zeller Decl. ¶ 9; Spinos Decl. ¶ 7; Zeller BWC at 17:57–18:20; Spinos BWC I at 2:18–2:40.  During this process, the Officers can be seen on video placing their knees against Plaintiff's back.  Zeller BWC at 18:01–18:21; Spinos BWC I at 2:23–2:40.

Officer Spinos later searched Plaintiff's vehicle and found a cracked pipe.  Spinos Decl. ¶ 9.   According to Officer Spinos, the pipe appeared to be encrusted with methamphetamine.  *Id.*  According to Plaintiff, the pipe belonged to a friend and he was completely unaware it was in the vehicle.  ECF No. 27-13 at 100:17–101:5.

### D.     Subsequent State Court Proceedings

In a later state court proceeding, Plaintiff was found guilty of "Possession of Paraphernalia Used for Narcotics" in violation of Health and Safety Code Section 11364. ECF No. 27-25 at 2.[2]

---

[2] Defendants request that the Court take judicial notice of the verdict form in the San Diego Superior Court case—*The People of the State of California v. Miguel Antonio Dominguez*, Case No. CN384937—entered on October 25, 2018.  ECF Nos. 27-5 at 1–2; 27-25.

Under Fed. R. Evid. 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction;  or  (2) can  be  accurately  and  readily  determined  from  sources  whose

## II. Procedural Background

On March 6, 2020, Plaintiff initiated this action asserting a claim against Defendants Zeller and Spinos for excessive force under 42 U.S.C. § 1983.  ECF No. 1 ¶¶ 11–13.  Plaintiff also asserted a claim for municipal liability against the City of Escondido, alleging the City had created a *de facto* policy "encouraging excessive force by its officers, by failing to supervise, review, and discipline its officers' use of force against citizens." *Id.* ¶ 14.  On January 20, 2021, the Court granted the Parties' Joint Motion to Dismiss Plaintiff's municipal liability claim against Defendant City of Escondido with prejudice.  ECF Nos. 17 at 2; 18 at 1.

On April 26, 2021, the Court granted Plaintiff's former counsel's Motion to Withdraw as Plaintiff's attorney of record in this case.  ECF No. 23 at 1.  The Court continued all pending deadlines in the case by ninety days to allow Plaintiff time to secure new counsel.  *Id.* at 3.  Plaintiff has continued to proceed *pro se* since the withdrawal of his former counsel.  *See* Docket.

On July 7, 2021, Defendants filed the instant Motion for Summary Judgment.  ECF No. 27-1.  On September 2, 2021, Defendants filed a notice indicating that they had not received an Opposition to their Motion by the August 30, 2021 deadline.  ECF No. 31 at 2.  The Court subsequently extended Plaintiff's deadline to file an Opposition twice.  ECF Nos. 32, 33.  Plaintiff did not file an Opposition.  *See* Docket.  For these reasons, on November 3, 2021, the Court issued an Order to Show Cause requiring Plaintiff to show in writing why the instant action should not be dismissed for failure to comply with the Local Rules and failure to prosecute.   ECF No. 38 at 2.

In response, Plaintiff filed a letter *nunc pro tunc* to November 18, 2021.  ECF No. 40.  In light of Plaintiff's filing, the Court discharged the Order to Show Cause and

accuracy cannot reasonably be questioned."  Because the verdict form is a state court record, the Court **GRANTS** Defendants' request.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (holding courts "may take judicial notice of undisputed matters of public record," including "documents on file in federal or state courts").

provided Plaintiff with yet another opportunity to file an Opposition.  ECF No. 41 at 2.
The Court cautioned Plaintiff that if he did not file an Opposition by the Court's deadline,
the Court would thereafter construe Plaintiff's November 18, 2021 letter as his
Opposition.  *Id.*

As Plaintiff did not file an Opposition, the Court construes Plaintiff's November
18, 2021 letter as his Opposition.  *See* Docket.  On December 22, 2021, Defendants filed
a Reply.  ECF No. 42.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move
for summary judgment, identifying each claim or defense—or the part of each claim or
defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court
shall grant summary judgment if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

Material facts are those that may affect the outcome of the case.  *See Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is
"genuine" if the evidence is such that "a reasonable jury could return a verdict for the
nonmoving party."  *See id.*  "[I]n ruling on a motion for summary judgment, the judge
must view the evidence presented through the prism of the substantive evidentiary
burden."  *Id.* at 254.  The question is "whether a jury could reasonably find *either* that the
[moving party] proved his case by the quality and quantity of evidence required by the
governing law *or* that he did not."  *Id.* (emphasis in original).  "[A]ll justifiable inferences
are to be drawn in [the nonmovant's] favor."  *Id.* at 255.

The moving party "bears the initial responsibility of informing the district court of
the basis for its motion, and identifying those portions of the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any,
which it believes demonstrate the absence of a genuine issue of material fact."
*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).
///

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading," *Liberty Lobby*, 477 U.S. at 248, and affidavits or declarations supporting his opposition "must be made on personal knowledge," Fed. R. Civ. P. 56(c)(4). The opposing party need not show the issue will be resolved conclusively in its favor. *See Liberty Lobby*, 477 U.S. at 248–49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id*.

Where there is video evidence of the incident giving rise to an excessive force claim, a court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). However, the "mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018).

## ANALYSIS

### I.   The Excessive Force Claim (Defendants Zeller and Spinos)

Defendants Zeller and Spinos (collectively, "Defendant Officers") move for summary judgment on Plaintiff's claim for excessive force on two grounds. ECF No. 27-1 at 13. First, Defendants contend there is no triable issue of fact that the force the Defendant Officers used in this case was objectively reasonable. *Id.* at 13–14. Second, even assuming there is a material dispute of fact as to whether excessive force was used, the Defendant Officers claim they are entitled to qualified immunity on Plaintiff's claim. *Id.* at 14.

#### A.   *Whether Defendant Officers' Use of Force Was Objectively Reasonable*

A claim that officers used excessive force "in the context of an arrest or investigatory stop of a free citizen" is analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Ames v. King Cnty.*, 846 F.3d 340, 348 (9th Cir. 2017) (holding use of force "is a seizure that is subject to the Fourth Amendment's reasonableness requirement"). "Under the

8

Fourth Amendment, officers may use only such force as is 'objectively reasonable' under the circumstances." *Ames*, 846 F.3d at 348 (citing *Graham*, 490 U.S. at 397). Accordingly, the Court must determine, in light of the particular facts and circumstances Officers Zeller and Spinos faced, whether the actions the Officers took in extracting Plaintiff from his vehicle and arresting him were objectively reasonable.

The Court makes this determination "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citation omitted). Instead, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397–97.

In order to determine "whether the force used to effect a particular seizure is reasonable under the Fourth Amendment," courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the Ninth Circuit has held "on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury.").

### 1. Nature and Quality of the Intrusion

The Court first considers the quantum of force used to arrest Plaintiff. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007); *see Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (stating the court must first "assess the severity of

the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted") (internal quotation marks omitted).

The use of force challenged in the instant case reduces to the following: while attempting to extract Plaintiff from his vehicle, Defendants Zeller and Spinos forced Plaintiff's left arm out of the vehicle. Zeller BWC at 16:48–16:52; Zeller Decl. ¶ 6; Spinos Decl. ¶ 4. Defendant Spinos applied force against a "pressure point" on the left side of Plaintiff's face. Spinos Decl. ¶ 4. Defendant Spinos drew his taser and cautioned Plaintiff he would deploy it against him. Zeller Decl. ¶ 6; Spinos Decl. ¶ 4; Spinos BWC I at 1:28–1:35. Defendant Zeller put his left knee on Plaintiff's thigh and pressed his forearm against Plaintiff's neck. Zeller Decl. ¶ 7; Zeller BWC at 17:00–17:45. Defendants Zeller and Spinos subsequently forced Plaintiff from his vehicle and to his knees, and then to his stomach, before placing Plaintiff in handcuffs. Zeller Decl. ¶ 9; Spinos Decl. ¶ 7; Zeller BWC at 17:57–18:20; Spinos BWC I at 2:18–2:40.

Defendants compare the type of force used in this case to "pain compliance" techniques. ECF No. 27-1 at 26. It is true the Ninth Circuit has found the quantum of force from such techniques to be "less significant than most claims of force." *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (holding reasonableness inquiry satisfied where use of force consisted of physical pressure administered on limbs "in increasing degrees, resulting in pain").

The use of "pain compliance" techniques, however, are not the *only* applications of force at issue in this case. Here, Plaintiff contends the Defendant Officers placed him in a "choke hold." ECF No. 40 at 1. The video evidence corroborates that Defendant Zeller applied some type of physical neck restraint against Plaintiff. Zeller BWC at 17:00–17:45. There is also unrefuted video evidence both Defendant Officers placed their knees on Plaintiff's back while effectuating his arrest. Zeller BWC at 18:01–18:21; Spinos

///

///

///

BWC I at 2:23–2:40.  Finally, Plaintiff also contends Defendant Spinos pointed his taser at Plaintiff and threatened to deploy it against him.  ECF No. 40 at 1–2.[3]

Accepting Plaintiff's version of the events, the reasonableness of these uses of force must be evaluated.  *See Cortesluna v. Leon*, 979 F.3d 645, 653 (9th Cir. 2020) (holding a knee on the back "constitutes a meaningful personal intrusion when it causes injury"); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) ("There is a robust consensus among the circuits that the use of a chokehold on a non-resisting person violates the Fourth Amendment."); *Robinson v. Solano Cty.*, 278 F.3d 1007, 1015 (9th Cir. 2002) (stating in cases involving investigatory stops, the Ninth Circuit has "consistently applied the principle that drawing weapons . . . is unreasonable in many situations.").

Here, there are triable disputes as to the amount of force applied against Plaintiff.  For example, the Parties appear to dispute the amount of pressure Officer Zeller applied to Plaintiff's neck.  The evidence on the record indicates Officer Zeller used his left forearm to apply pressure to the left side of Plaintiff's neck for approximately forty-five seconds or less.  Zeller Decl. ¶¶ 7; Spinos Decl. ¶ 5; Zeller BWC at 17:00–17:45. Plaintiff is clearly heard on the bodycam footage telling the Officers he cannot breathe. Zeller BWC at 17:31–17:32; Spinos BWC I at 1:52–1:54; ECF No. 27-10 at 7:10.  The Court must also credit Plaintiff's deposition testimony that the technique used was sufficient to cause him to black out.  ECF No. 27-13 at 196:14–20.  In contrast, Defendants contend Plaintiff was still able to provide verbal indication he would comply with the Officers' instructions.  Zeller Decl. ¶ 9; Spinos Decl. ¶ 7.

Upon careful, repeated reviews of the video evidence, the Court is unable to determine with certainty whether Officer Zeller applied pressure upon Plaintiff's neck

---

[3] In his declaration, Officer Spinos states he merely warned Plaintiff that he might deploy his taser.  Spinos Decl. ¶ 4.  The video evidence shows Officer Spinos unholstering his taser although it stops short of conclusively showing Officer Spinos "brandished" it against Plaintiff.  Spinos BWC I at 1:34–1:50.

with sufficient force to render Plaintiff temporarily unconscious.   A reasonable juror however, viewing the footage, could credit Plaintiff's version of the facts.   At the summary judgment stage, this dispute cannot be resolved in Defendants' favor.  *See, e.g.*, *Martinez v. City of Pittsburg*, No. 17-cv-04246-RS, 2019 U.S. Dist. LEXIS 37904, at *16 (N.D. Cal. Mar. 8, 2019).

Defendants argue there is no evidence Plaintiff suffered any injury from Officer Zeller and Spinos' applications of force.  ECF No. 27-1 at 23.  The Court agrees that "the severity of [a plaintiff's] injuries may support the inference that the force used was substantial[.]"  *Santos*, 287 F.3d at 855.  In this case, there is no such evidence to support such an inference.  Plaintiff did not submit evidence he was injured as a result of the Defendant Officers' application of force.[4]   The infliction of a physical injury, however, "are facts considered but are not necessary to establish an excessive force claim."  *Schafer v. El Dorado Cty.*, No. 2:06-cv-1259-MCE-DAD, 2007 U.S. Dist. LEXIS 1336, at *9 (E.D. Cal. Jan. 9, 2007); *see Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").   As the Ninth Circuit has cautioned, "[a]lthough such a form of deductive reasoning may be appropriate in some use-of-force cases, in others the intrusion may be substantial even though the injuries are minor."  *Santos*, 287 F.3d at 855.

Construing the evidence in the light most favorable to Plaintiff, as the Court must at this stage, the Court finds a jury could reasonably conclude the Officers' use of force in this case was more than a minimal intrusion on Plaintiff's liberty.  *See LaLonde v. Cty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (holding jury could conclude officer who

---

[4] Defendants' contention that Plaintiff *admitted* he was uninjured, however, is from the Courts' perspective, one step too far.   As to this point, Defendants rely on bodycam footage taken by Officer Spinos.  *See* ECF No. 27-1 at 23.  Upon the Court's review, however, Plaintiff's responses to Officer Spinos' question as to whether he was injured appear audibly ambiguous.  Bodycam Footage taken by Officer Cory Spinos II (ECF No. 27-23, "Spinos BWC II") at 0:45–1:20.

forcefully placed a knee onto a plaintiff's back used force "in excess of what was reasonable"); *Manesh v. City of Beverly Hills*, No. CV 20-7427 DSF (ASx), 2021 U.S. Dist. LEXIS 252580, at *13 (C.D. Cal. Aug. 10, 2021) (finding reasonable jury could find more than a minimal intrusion on plaintiff's liberty where officers grabbed plaintiff's neck and pushed him against the patrol car and put their knees on his back as he lay on the ground).

### 2. *Governmental Interests at Stake*

"Force, even if less than deadly, is not to be deployed lightly. To put it in terms of the test we apply: the degree of force used by the police is permissible only when a strong government interest *compels* the employment of such force." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003). In evaluating the governmental interest in the use of force, courts look to: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The Court's inquiry is not limited to these factors. Instead, "'the facts and circumstances' of every excessive force case will vary widely." *Forrester*, 25 F.3d at 815. As such, the Court's ultimate inquiry addresses "the totality of the circumstances" to consider "whatever specific factors may be appropriate in a particular case[.]" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (internal quotation marks omitted).

### a. Severity of the Crime

In this case, there is no indication Plaintiff was suspected of having committed any crime. Instead, Officer Zeller was responding to a dispatch report of a child allegedly left unattended in a vehicle. Zeller Decl. ¶ 2; ECF No. 27-8 at 2:3–11. Upon opening the door of the vehicle, Officer Zeller was able to identify an attending adult, Plaintiff, sitting in the driver's seat. Zeller Decl. ¶ 2; Zeller BWC at 0:17–0:25

Nevertheless, the calculus of the encounter changed after Officer Zeller opened the door. According to Officer Zeller, Plaintiff had an unknown object in his left hand and

kept this hand near his right hip until he was ordered out of the vehicle.  Zeller Decl. ¶¶ 2–3.  There is also no dispute a pipe was found in Plaintiff's vehicle and that Plaintiff was later found guilty of "Possession of Paraphernalia Used for Narcotics" in violation of Health and Safety Code Section 11364—a misdemeanor.  ECF No. 27-25 at 2; *see In re Alvarez*, 222 Cal. App. 4th 1064, 1072 (2013) (categorizing possession of narcotics paraphernalia under Health and Safety Code Section 11364 as a misdemeanor offense).

Normally, the governmental interest in using force against a person suspected of a misdemeanor is a minor one.  *See Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019) ("[A] particular use of force would be more reasonable, all other things being equal, when applied against a felony suspect than when applied against a person suspected of only a misdemeanor."); *Phillips v. City of Fairfield*, 406 F. Supp. 2d 1101, 1112 (E.D. Cal. 2005) (finding arrest for non-violent misdemeanor "weighs against the use of force").

Nevertheless, the Court also evaluates the nature of the circumstances at the time the allegedly excessive force was employed.  *Ames*, 846 F.3d at 348 (holding district court applied severity of the crime factor "too narrowly" when it focused on misdemeanor obstruction "rather than the nature of the ongoing emergency").  Here, Officer Zeller declared he suspected Plaintiff was either smoking or about to smoke drugs in the presence of a minor within an enclosed vehicle.  Zeller Decl. ¶¶ 2–4.  Defendants therefore contend the government had a "compelling interest" in protecting a minor from physical abuse—in this case, in preventing Plaintiff's minor child from being in an enclosed vehicle with Plaintiff as he was smoking or about to smoke.  ECF No. 27-1 at 16–19.

Defendants' argument reflects the "second way" in which the Ninth Circuit has "sometimes applied the severity of the crime factor."  *Nehad*, 929 F.3d at 1136.  "Although the danger a suspect posed is a separate *Graham* consideration," the Ninth Circuit has "used the severity of the crime at issue as a proxy for the danger a suspect poses at the time force is applied."  *Id.*

Here, the Court acknowledges "[i]t is evident beyond the need for elaboration that [the governmental] interest in safeguarding the physical and psychological well-being of a minor is compelling." *New York v. Ferber*, 458 U.S. 747, 756–57 (1982) (internal quotation marks omitted). Despite this, there is a triable issue as to whether Plaintiff actually posed an immediate threat to his minor child. In his deposition, Plaintiff contends the pipe belonged to a friend and he was unaware it was in the vehicle. ECF No. 27-13 at 100:17–101:5. The videotape evidence does not conclusively show whether Plaintiff was concealing anything in his left hand. Plaintiff denied having such a pipe and stated he had a blow torch to light his cigarettes and to fix electrical issues in his car. Zeller BWC at 11:41–12:38; ECF No. 27-10 at 4:13–19.

Defendants are essentially asking this Court to make a credibility determination. Whether Plaintiff's version of the facts is worthy of credence cannot be determined on a motion for summary judgment. *Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 756 (1978) ("[A] district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented[.]"). In other words, whether the Defendant Officers credibly and reasonably believed Plaintiff posed an immediate threat to his minor child presents a genuine question of material fact that must be resolved by a jury.

b.    Immediate Threat

The Court considers next whether Plaintiff posed an immediate threat to the safety of the Officers. Defendants argue Plaintiff posed an immediate threat by refusing an order to step out of this vehicle. ECF No. 27-1 at 19. Defendants further note Plaintiff: (1) had been holding a blow torch in his right hand; (2) was allegedly concealing an object in his left hand; and (3) had access to other tools in the vehicle, including a ratchet and socket in the center console. *Id.* In addition, Defendants note Officer Zeller had learned from dispatch that Plaintiff had previously been arrested for assault with a deadly weapon. *Id.*

///

Plaintiff's account of the incident and the videotape evidence does not differ significantly from Defendants' accounting.   Plaintiff does not dispute he was holding a blow torch in his right hand when Officer Zeller opened the door to his vehicle.   ECF No. 27-13 at 158:17–19; Zeller BWC at 0:25–0:35.   Nevertheless, the video evidence shows that when the encounter began, Plaintiff was compliant.   He answered Officer Zeller's questions and waited in his car.   Zeller BWC at 0:17–16:00.   It was only when Officer Zeller informed Plaintiff he was being detained and then did not answer Plaintiff's questions as to why he was being detained that Plaintiff became upset and increasingly uncooperative. *Id.* at 16:01–19:38.

After this point, the bodycam footage shows Plaintiff was noncompliant with the Defendant Officers' instructions to exit the vehicle.   The footage also shows that fairly early into the encounter, Officers Zeller and Spinos were able to secure Plaintiff's left hand and force it out of the vehicle.   Zeller BWC at 16:48–16:52; Zeller Decl. ¶ 6; Spinos Decl. ¶ 4.   Plaintiff was not verbally threatening the officers.

Even so, it would be incorrect to say that Plaintiff posed *no* threat to the Officers.   The footage does not indicate what Plaintiff was doing with his right hand.   Plaintiff presumably did still have access to his blow torch.   Plaintiff also conceded at his deposition there were tools in the car—a fact that is corroborated by the video evidence.   ECF No. 27-13 at 203:19–24; Zeller BWC at 12:38–12:45.   In theory, Plaintiff could have attempted to reach for the blow torch or one of the other tools in the car.   Plaintiff could have also, in theory, attempted to bite Officer Zeller, as Officer Zeller feared he would.   Zeller Decl. ¶ 7.

As the Ninth Circuit has stated, "a suspect who repeatedly refuses to comply with instructions or leave [his] car escalates the risk involved for officers unable to predict what type of noncompliance might come next." *Brooks v. City of Seattle*, 599 F.3d 1018, 1028–29 (9th Cir. 2010).   Although Plaintiff may not have posed a *great* threat, a reasonable jury could find that Plaintiff did pose at least *some* threat by virtue of his continued noncompliance.

c.      Resisting Arrest and Other Factors

The third enumerated governmental interest factor is whether a suspect was "actively resisting arrest or attempting to evade arrest by flight." *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001).   Defendants contend Plaintiff was "actively" resisting.  ECF No. 27-1 at 20–23.  The Court disagrees.

From the video camera footage, it is undisputable Plaintiff verbally and physically refused to get out of his vehicle when instructed to do so.  Further, in his deposition testimony, Plaintiff conceded he did not exit the vehicle when instructed to do so.  ECF No. 27-13 at 195:23–196:7.  Plaintiff further testified that as the Defendant Officers were attempting to physically extract him, he used his right arm to hold onto the passenger seat to prevent himself from being pulled out.  *Id.* at 186:19–187:9; 196:4–7.

Although it is therefore unquestionable Plaintiff engaged in *some* resistance, the Ninth Circuit has "long distinguished between passive and active resistance."  *Rice v. Morehouse*, 989 F.3d 1112, 1123 (9th Cir. 2021).  From the bodycam footage, Plaintiff's resistance does not appear to have involved any violent actions towards the Defendant Officers.  In addition, there is no evidence Plaintiff was attempting to flee.

As such, Plaintiff's level of resistance is more comparable to a "relatively passive" or "minor" form of resistance than to truly "active" resistance.  *See Rice*, 989 at 1123 (finding plaintiff's refusal to exit his vehicle was "far closer to 'the purely passive protestor who simply refuses to stand'"); *Coles v. Eagle*, 704 F.3d 624, 629–30 (9th Cir. 2012) ("We have drawn a distinction between passive and active resistance, and failing to exit a vehicle is not active resistance.") (internal quotation marks omitted); *Mattos v. Agarano*, 661 F.3d 433, 445 (9th Cir. 2011) (holding suspect "engaged in some resistance to arrest" when she "refused to get out of her car when requested to do so and later stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from her car"); *Bryan*, 630 F.3d at 829–30 ("Even if [the suspect] failed to comply with the command to remain in his vehicle, such noncompliance does not constitute 'active resistance' supporting a substantial use of force."); *Klamut v. Cal.*

*Highway Patrol*, No. 15-cv-02132-MEJ, 2017 U.S. Dist. LEXIS 17337, at *43 (N.D. Cal. Feb. 7, 2017) (finding that plaintiff who ignored commands, shut vehicle door repeatedly, and refused to exit patrol car engaged in resistance that was "something more than purely passive" but "less than active").

Accordingly, while a reasonable jury could conclude Plaintiff engaged in more than passive resistance, the evidence before the Court on summary judgment does not establish Plaintiff "actively" resisted.

### d.   Other Factors

In addition to the *Graham* factors described above, the Court also considers the "totality of the circumstances." *Bryan*, 630 F.3d at 826.  "Whether an officer warned a suspect that failure to comply with the officer's commands would result in the use of force is another relevant factor in an excessive force analysis." *Nehad*, 929 F.3d at 1137. Here, the Court notes Plaintiff was warned at the outset that if he did not follow the Officer Zeller's instructions that force could be used against him.  ECF No. 27-10 at 5:19–20.  This factor weighs in favor of the Defendants.

"Another relevant factor is 'the availability of alternative methods of capturing or subduing a suspect.'" *Nehad*, 929 F.3d at 1138 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)).  The Parties did not address this point, however, and the Court declines to engage in after-the-fact speculation.  Regardless, "the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  This factor does not weigh in favor of either Party.

### e.   Balancing

Finally, the Court balances the severity of the intrusion with the government's interest.  In this case, the Court acknowledges that there are "only so many ways that a person can be extracted from a vehicle against [his or her] will, and none of them is pretty." *Mattos*, 661 F.3d at 459 (Silverman, J, concurring).

///

18

Nevertheless, there are a number of material factual disputes in this case directed to, among other things, the quantum of force deployed against Plaintiff and whether Plaintiff posed an immediate threat to his minor child or to the Officers.  Viewing the record in the light most favorable to Plaintiff, the *Graham* factors do not fully support either side.  The Court "cannot say that a verdict in favor of the defendants on the claim for excessive force is the only conclusion that a reasonable jury could reach."  *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014).

Consequently, the Court finds the question as to reasonableness of force is more appropriately resolved by a jury.  *See Chew*, 27 F.3d at 1443 ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law."); *see also Manesh*, 2021 U.S. Dist. LEXIS 252580, at *16–17 (stating question of reasonableness should be resolved by jury); *Adamson v. City of S.F.*, No. 13-cv-05233-DMR, 2015 U.S. Dist. LEXIS 124588, at *20 (N.D. Cal. Sep. 17, 2015) (stating reasonable jury could question whether officer's "use of a carotid hold amounted to excessive force").

### B.     Whether Defendants Are Entitled to Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, (1982)).

The doctrine of qualified immunity "is more than a 'mere defense to liability,'" but is "a complete *immunity from suit*" which is "effectively lost if a case is erroneously permitted to go to trial."  *Mueller v. Auker*, 576 F.3d 979, 987 (9th Cir. 2009) (emphasis in original).  The Supreme Court has emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To determine whether government officials are entitled to qualified immunity, courts conduct a two-step inquiry.  First, courts consider "whether the facts that a plaintiff

19

has alleged make out a violation of a constitutional right[.]"  *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).  Second, courts consider "whether that right was clearly established at the time of the incident."  *Id.*  Courts have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.

In this case, the Court has determined there is an open question as to whether the Defendant Officers violated a constitutional right.  The Court therefore proceeds to the second step of the qualified immunity inquiry—whether "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his or] her conduct to be unlawful in that situation."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The "threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court."  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).  "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law."  *Green v. City & Cty. of S.F.*, 751 F.3d 1039, 1052 (9th Cir. 2014) (citing *Act Up!*, 988 F.2d at 873)).  "Both are questions of law to be determined by the court in the absence of genuine issues of material fact."  *Id.*

Under Supreme Court precedent, "[w]hile there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted).  There can, of course, "be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."  *Id.*  But "'a body of relevant case law' is usually necessary to '"clearly establish" the answer' with respect to probable cause."  *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).  "Put simply, qualified ///

immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Defendants contend no clearly established law would have put the Defendant Officers on notice that using "pain compliance" techniques and "control holds" while extracting an individual who was: (1) "actively" refusing to exit a vehicle; and (2) "hiding his right hand behind the passenger seat" would violate the Fourth Amendment. ECF No. 27-1 at 26–29.

The Court does not wholly agree with how Defendants have framed this inquiry. Instead, drawing all inferences in Plaintiff's favor, the Court finds the question at hand is whether police officers violate clearly established law when they progressively increase their use of force against a misdemeanant from verbal commands to control holds, a pressure point application, "brandishing" a taser, placing significant pressure on the misdemeanant's neck, forcing the misdemeanant out of the car, and then placing their knees on the misdemeanant's back while handcuffing him.  The Court considers this question under circumstances where the misdemeanant has refused the officers' instructions to exit a vehicle and instead engaged in less than active resistance.  For purposes of this analysis, the Court also assumes the misdemeanant does not pose a threat to any minor children in the same vehicle.

In considering this question, the Court is mindful that it is Plaintiff who "bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991); *see also Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("The plaintiff in a § 1983 action bears the burden of proving that the right allegedly violated was clearly established at the time of the official's allegedly impermissible conduct.").

Here, Plaintiff neither identified a sufficiently analogous case nor adequately explained how the Defendant Officers' conduct was so plainly egregious any reasonable officer would know such conduct was a violation of Plaintiff's constitutional right to be
///

free from excessive force.  The Court, therefore, cannot find Plaintiff has met his summary judgment burden in this case.

Ninth Circuit precedent is instructive on this point.  In *Felarca v. Birgeneau*, 891 F.3d 809, 822 (9th Cir. 2018), the Ninth Circuit considered whether an officer violated clearly established law when "after several warnings to disperse have been given, the officer uses baton strikes on a plaintiff's torso or extremities for the purpose of moving a crowd actively obstructing the officer from carrying out lawful orders in a challenging environment."  The *Felarca* court held to meet the burden of showing the right allegedly violated was clearly established, "plaintiffs must generally identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment."  *Id.*  The *Felarca* court concluded plaintiffs had not met their burden when they devoted "scant argument" or "failed to address [the second step of qualified immunity] at *all*[.]"  *Id.* (emphasis in original).

Similarly, in *Reese v. County of Sacramento*, 888 F.3d 1030, 1038 (9th Cir. 2018), the Ninth Circuit affirmed a district court's ruling a police officer was entitled to qualified immunity where plaintiff had "not identified any sufficiently analogous cases" of a "clearly established Fourth Amendment right[.]"  The *Reese* court concluded that "[a]bsent a showing by [plaintiff] that the right was clearly established at the time," the defendant officer was "entitled to qualified immunity on the Fourth Amendment excessive force claim."  *Id.* at 1040.

In *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017), the Ninth Circuit considered whether an officer violated clearly established law by progressively increasing the use of force "from verbal commands, to an arm grab, and then a leg sweep maneuver" against a misdemeanant who "refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment."  The *Shafer* court again emphasized that plaintiff "bears the burden of showing that the rights allegedly violated were clearly established."  *Id.* at 1118 (internal

quotation marks omitted).  The *Shafer* court then held that because plaintiff failed "to identify sufficiently specific constitutional precedents to alert [the defendant officer] that his particular conduct was unlawful, [the defendant officer was] entitled to qualified immunity." *Id.*

Finally, in *Sharp v. County of Orange*, 871 F.3d 901, 916 (9th Cir. 2017), the Ninth Circuit considered whether an officer violated clearly established law by yanking the plaintiff's left arm behind his back with enough force that it required surgery and then applying handcuffs tight enough to break plaintiff's skin.  *Id.* at 916.  The *Sharp* court characterized this application of force "significant."  *Id.*  Nevertheless, the *Sharp* court held the defendant officer was still "entitled to qualified immunity because [p]laintiffs have not offered anything other than general legal propositions which cannot clearly establish that [the officer's] particular conduct was unlawful."  *Id.*

District Courts within this Circuit have reached similar conclusions.  *See, e.g.*, *Goldsby v. City of Henderson Police Dep't*, No. 2:18-cv-01912-GMN-VCF, 2020 U.S. Dist. LEXIS 243749, at *23–24 (D. Nev. Nov. 13, 2020) (finding officers entitled to qualified immunity where plaintiff provided no law "indicating that he has a clearly established right to be free from strikes to the head when resisting arrest and refusing to show his hands as officers are trying to arrest him when he was believed to potentially be armed"); *Smith v. Aubuchon*, No. 2:14-CV-0775-KJM-DMC-P, 2020 U.S. Dist. LEXIS 56472, at *44–45 (E.D. Cal. Mar. 30, 2020) (finding defendant entitled to qualified immunity where plaintiff failed to specify what Ninth Circuit precedent he was referencing or explain "how his particular circumstance [was] a *clear* violation of a constitutional right") (emphasis in original); *Mackovski v. Bex*, No. SACV 11-01538-CJC(DFMx), 2018 U.S. Dist. LEXIS 81991, at *24 (C.D. Cal. May 15, 2018) (finding defendant officer entitled to qualified immunity where plaintiff failed to cite to any existing precedent that clearly established the illegality of the alleged conduct or failed to show the conduct was so egregious any reasonable person would have recognized a constitutional violation).

The burden to show the illegality of the alleged conduct was clearly established rested on Plaintiff's shoulders and he has not met it here—despite numerous opportunities to file a proper Opposition to Defendants' Motion for Summary Judgment. The arguments contained in Plaintiff's November 18, 2021 letter are simply not sufficient to satisfy Plaintiff's burden.

Even if the Court were to use its "'full knowledge' of relevant precedent," *Gordon v. Cnty. of Orange*, No. 19-56032, 2021 U.S. App. LEXIS 22055, at *15 (9th Cir. July 26, 2021), the Court is mindful it must still generally identify precedent that put the Defendant Officers on "clear notice" using force in the particular circumstances of this case would be excessive, *S. B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017); *see Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.") (internal quotation marks omitted).  Here, however, the Court is aware of "no controlling precedent or judicial precedent that is specific enough" to have alerted the Defendant Officers in this case that "the degree of force" used in these circumstances was unreasonable.  *See Sharp*, 871 F.3d at 917.[5]

For these reasons, the Court concludes Defendant Officers Zeller and Spinos are entitled to qualified immunity in this case.

## II.     Municipal Liability (Defendant City of Escondido)

Defendant City of Escondido moves for summary judgment to be entered in its favor as to Plaintiff's claim for municipal liability.  ECF No. 27-1 at 29.  However, this

---

[5] The fact that this Court concluded there is a triable issue as to whether the Defendant Officers' application of force was objectively reasonable also does not preclude it from holding the Defendant Officers are entitled to qualified immunity. *See S. B.*, 864 F.3d at 1014–15 (holding defendant officer was entitled to qualified immunity at summary judgment stage, even where there was a triable issue as to whether the defendant officer's use of force was objectively reasonable).

Court already previously granted the Parties' Joint Motion to dismiss Plaintiff's *Monell* claim against the Defendant City with prejudice, ECF No. 18 at 1, and a *Monell* claim is the only means of asserting a § 1983 claim against a municipality. *See, e.g.*, *Peterson v. Allegheny Cty.*, No. 2:21-CV-00078-CCW, 2022 U.S. Dist. LEXIS 17466, at *115 (W.D. Pa. Jan. 31, 2022) ("[A] *Monell* claim is the exclusive means of pleading a 42 U.S.C. § 1983 claim against a municipality[.]"); *Cardenas v. Cty. of Alameda*, No. C 16-05205 WHA, 2017 U.S. Dist. LEXIS 66904, at *6 (N.D. Cal. May 2, 2017) ("The sole avenue of municipal liability is under *Monell*.").

For these reasons, the Court **DENIES AS MOOT** Defendant City of Escondido's motion for summary judgment.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiff's claims against Defendants Zeller and Spinos. The Court **DENIES AS MOOT** Defendants' Motion for Summary Judgment with respect to Plaintiff's claims against Defendant City of Escondido and **DISMISSES** Defendant City of Escondido from the case, in light of the Court's prior Order granting the Parties' Joint Motion to Dismiss Plaintiff's *Monell* claims.

The Clerk of Court **SHALL ENTER JUDGMENT** in favor of Defendants Zeller and Spinos and **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  March 24, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge